UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

| | |
|---|---|
| STATE OF COLORADO,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al*.,<br><br>Defendants. | Case No. 26-cv-04832 |

DECLARATION OF ANDREW J. DEGREGORIO

I, Andrew J. DeGregorio, hereby make the following declaration with respect to the above-captioned matter:

1. I am employed by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Office of Asset and Facilities Management (OAFM), as the Energy and Environmental Programs Manager. I have held this position since September 7, 2025.

2. I have been employed by ICE since September 2025. Before starting with ICE, I was a Senior Environmental Protection Specialist with the Federal Emergency Management Agency (FEMA) for nearly thirteen (13) years. For six (6) years before my role with FEMA, I was Director of the Bureau of Military Construction & Engineering/Facilities Design & Project Management Specialist for the Pennsylvania (PA) Army National Guard. Prior to serving as a federal employee, I had been an environmental and civil engineering consultant in the private sector since August of 1987. I also served in the U.S. Army Reserve and PA Army National Guard as a soldier/officer from

February 1983 through April 2013 (last 15 years as an Engineer Officer)—retiring as a Lieutenant Colonel (LTC).

3. As the ICE Energy and Environmental Programs Manager (Environmental Protection Specialist), along with a staff of seven contracted employees and consultation with DHS—Energy & Environment Division (EED) staff—I provide energy and environmental compliance subject matter expertise and compliance guidance to OAFM and ICE.

4. In my professional experiences, I have had to inspect and assess real property for easements, utility infrastructure, and construction as well as ensure projects' and facilities' environmental compliance, and am familiar with the elements and requirements of the National Environmental Policy Act (NEPA).

5. The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS.

6. As the Energy and Environmental Program Manager, I am now familiar with the property located, according to Weld County, Colorado land records at 3001 North Juniper Street, Hudson, CO 80642-9400, also known as the Big Horn facility. The property consists of approximately 80 acres, upon which a large, currently vacant former prison sits. The prison has a floor area of approximately 296,500 square feet.

7. The facility is located within the Town of Hudson's I-3 zoning district, which accommodates industrial uses that have the highest allowed amounts of noise and pollution compared to other industrial districts, including uses such as recycling facilities and cement production. This I-3 district is surrounded on three sides by an I-1 district; another industrial use

designation. Some examples of potential I-1 use include a commercial bakery, a small-scale auto repair shop, or a community center. Hudson, CO Code Mun. Regs., Art. 5, § 16-55(a), (c) (2025). The Town of Hudson Zoning Map confirms this designation:




*Zoning Map*, Town of Hudson, https://hudsonco.gov/230/Maps#docaccess-1f31324fb9797715a969e858a96d2a7a14d8133d8f726b2684e14842b0ca419b (last viewed Oct. 16, 2026).

8. An overview of the project area for the property shows that while there are threatened and endangered species of birds, insects, and plants that could be potentially within the project area, none of the critical habitats appear in the project area or within the vicinity of the project area. Exhibit A, *IPaC Resource List*, U.S. Fish & Wildlife Service, https://ipac.ecosphere.fws.gov/location/LLJFJCWWQRB2PIC4YAR5SBZ3RQ/resources#endangered-species (last visited Oct. 16, 2026). While the project area includes some farmland soils of state

and local importance, it does not include any prime farmland or unique farmland soils. *Cf*. Exhibit B, *Prime and other Important Farmlands – Weld County, Colorado, Southern Part*, https://websoilsurvey.sc.egov.usda.gov/App/WebSoilSurvey.aspx (last visited Oct. 16, 2026)., and Exhibit C, Prime Farmland Image, https://websoilsurvey.sc.egov.usda.gov/App/WebSoilSurvey.aspx (last visited Oct. 16, 2026). Finally, the project area is in an area mapped as Zone X – Area of Minimal Flood Hazard and therefore is not within a mapped/designated floodplain. Exhibit D, *National Flood Hazard Layer FIRMette*, https://msc.fema.gov/portal/search?AddressQuery=2800%20south%20council%20rd%2C%20Oklahoma%20city%2C%20OK%2073115 (last visited Oct. 16, 2026).

9. I am now aware of contract number 70CDCR26D00000049, for the improvement and operation of a detention center at the Big Horn facility, but neither I nor my office reviewed the contract prior its execution. The contract provides for the operation of a 1,188-bed detention facility. The contract includes detention services, transportation services, housekeeping services, and case processing services, more fully laid out in the attached Exhibit E, Immigration and Customs Enforcement, Dep't of Homeland Security, Performance Work Statement: Big Horn Detention Facility (2026).

10. I am informed that there are a number of contracted improvements scheduled for the facility; some for the interior of the facility, and some for the exterior of the buildings and the associated grounds. These improvement items are designed to meet the government's contractual requirements; the specific improvement items themselves are set out in the contractor's proposal to meet these requirements. The detention facility itself is not being expanded. Work within the structures consists of those improvements needed to meet ICE and national detention standards

requirements, such as upgraded communications and security systems. All of this work has been or will be performed within the existing footprint of the facility. As of October 8, 2026, I am informed the following items of work have been completed outside the building:

- Existing main parking lot and entrance drives repaved, with 44 additional parking spaces added to this existing parking lot
- New perimeter, security fencing around the main parking lot with manual gates and manual barriers at each of the two existing vehicle entrances

11. As of October 8, 2026, I am informed the following items of work remain to be completed outside the facility:

- Pave a new, 64-space parking lot on the north side of the existing support building for ICE administrative staff working in new modular trailer building
- Pave a new, 5-space parking lot next to new modular trailer building required for Immigration Judges
- Install a new gate on the north side of the grounds to provide access to the new parking lot spaces for ICE administrative personnel
- Lay approximately 150 feet of new sidewalk to provide pedestrian access to modular immigration court modular trailer building
- Install the modular trailer buildings for ICE administration and immigration court on an approximately 12,500 square foot area of the site. These modular trailer buildings are to be fabricated off-site
- Install a modular trailer on an approximately 1,800 square foot area on the site for transportation services

12. I am informed that no new water, sewer, or electrical service works are anticipated to be necessary to support the provision of detention services at the facility as contracted.

13. In the DHS NEPA instruction manual, DHS has determined that certain categories of agency actions do not require further NEPA analysis because they have been found to not have significant environmental impacts. Exhibit F, Instruction Manual 023-01-001-01, Rev. 1, "Implementation of the National Environmental Policy Act (NEPA)" V-4–V-5 (Nov. 6, 2014) [hereinafter DHS NEPA Instruction Manual]. These are known as Categorical Exclusions, or CATEXs. *Id.* Some CATEXs have a higher potential to involve extraordinary circumstances and require preparation of a Record of Environment Consideration, or a REC, to document the CATEX. *Id*. A REC is defined as "[a]n internal DHS administrative document that records the application of a DHS CATEX … to a specific proposal. A REC is required for the application of any CATEX identified with an asterisk (*) in" the DHS NEPA instruction manual. *Id*. at II-6. The DHS REC template is included in the DHS NEPA instruction manual at Appendix C. It is a form document that has 12 boxes with questions to be checked, and accompanied by "an explanation when appropriate." *Id*. at C-1–C-3. For example, Box 8A asks, "Yes" or "No," "[w]ill the Proposed Action have a potentially significant effect on public health and safety?" *Id*. at C-2. The other boxes ask questions such as whether the proposed action would potentially have significant effects on protected species or environmentally sensitive areas, or whether the proposed action would be "significantly greater in scope or size than normally experienced for its particular category of action." *Id*. at C-2–C-3.

14. CATEX A5 categorically excludes

> Awarding of contracts for technical support services, ongoing management and operation of government facilities, and professional services that do not involve unresolved conflicts concerning alternative uses of available resources.

DHS NEPA Instruction Manual, at A–2. CATEX A5 requires no REC. *Id.*

15. CATEX B3 categorically excludes

> Proposed activities and operations to be conducted in an existing structure that would be compatible with and similar in scope to its ongoing functional uses and would be consistent with previously established safety levels and in compliance with applicable Federal, Tribal, State, or local requirements to protect the environment.

DHS NEPA Instruction Manual, at A–3. CATEX B3 requires no REC. *Id.*

16. CATEX *E2 categorically excludes

> New construction upon or improvement of land where all of the following conditions are met:
>
> (a) The structure and proposed use are compatible with applicable Federal, Tribal, State, and local planning and zoning standards and consistent with Federally-approved State coastal management
>
> programs,
>
> (b) The site is in a developed area and/or a previously-disturbed site,
>
> (c) The proposed use will not substantially increase the number of motor vehicles at the facility or in the area,
>
> (d) The site and scale of construction or improvement are consistent with those of existing, adjacent, or nearby buildings, and,
>
> (e) The construction or improvement will not result in uses that exceed existing support infrastructure capacities (roads, sewer, water, parking, etc.).

DHS NEPA Instruction Manual, at A–7. CATEX *E2 requires a REC.

17. Having reviewed the infrastructure work to be completed as well as the environmental circumstances of the site, I conclude that CATEXs A5, B3, and *E2 would be the CATEXs to apply to this project. The project facility sits on land that has already been developed and extensively disturbed. I note that there will be some modular structures placed on the existing site for administrative personnel and immigration judges, but under the contract, detention services will be performed in the existing detention facility structures. The performance of these services would therefore be compatible with and similar in scope to the existing functionality of the facility. The documents I reviewed that provide an overview of the project area reveal no sensitive environmental resource that could likely be affected by the identified renovations and the performance of detention services at the site.

Date: October 16, 2026

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

ANDREW J DEGREGORIO

Digitally signed by ANDREW J DEGREGORIO
Date: 2026.10.16 18:59:55 -04'00'

Andrew J. DeGregorio
Environmental Protection Specialist
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement