**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

STATE OF COLORADO,

Plaintiff,

v.

MARKWAYNE MULLIN, *et al*.,

Defendants.

Case No. 26-cv-04832

**DECLARATION OF MONICA BURKE**

I, Monica Burke, hereby make the following declaration with respect to the above-captioned matter:

1. I am currently employed by the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), as the Assistant Director for the Custody Management Division (CMD). I have held this position since August 2, 2021. Before this assignment, from March 2020 to August 2021, I served as the Deputy Assistant Director for Custody Programs within CMD and from 2011 to March 2020, I held various positions with the ICE Office of the Principal Legal Advisor, including Deputy Chief of the Enforcement and Removal Operations Law Division. As the Assistant Director, I am responsible for the oversight of compliance with ICE's detention standards and conditions of confinement at ICE detention facilities generally. I am further responsible for managing ICE detention operations efficiently and effectively to provide for the safety, security, and care of an average of about 69,000 detainees daily at approximately 300 facilities nationwide. This qualifies me to discuss the operational rationale for obtaining detention space at what is known as the Big Horn facility in Hudson, Colorado.

2. The statements contained in this declaration are based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS. I have personal knowledge of the matters set forth in this declaration based upon my position as the Assistant Director for CMD.

3. As the Assistant Director for CMD, I am familiar with the services contract with GEO Group, Inc., for detention services to be provided to ICE at the property located, according to Hudson, Colorado, land records, at 3001 North Juniper Street, Hudson, CO 80642-9400, also known as the Big Horn facility. The property consists of approximately 88 acres, upon which a large, currently vacant former prison sits. The prison has a floor area of approximately 296,499 square feet.

4. ICE intends to use the Big Horn facility to house removable aliens, according to ICE detention standards. Detainees will be housed at the facility after upgrades to the infrastructure are complete.

5. I am familiar with the contracting process in which ICE has engaged to select a vendor to perform the construction inside the prison to make it fit for purpose in holding detainees according to the ICE detention standards.

6. On July 15, 2026, DHS entered into a five-year contract valued at $528,678,643.44 with GEO Group, Inc., for detention services for the Big Horn facility.

7. The Big Horn facility was selected because it provides a centrally located, high-capacity detention option for individuals requiring custody in Colorado. The facility's location northeast of and adjacent to the Denver metropolitan area offers practical access to the population center of the ERO Denver Area of Responsibility (AOR) while also supporting

detention needs across the broader ERO Denver AOR, which encompasses Colorado and Wyoming. The facility's proximity to major east-west and north-south interstate corridors would facilitate efficient ground transportation between Denver and the surrounding AORs, including the Chicago, Saint Paul, and Salt Lake City AORs. This transportation access is particularly important given the Denver AOR's unique geographic challenges, including arrests and apprehensions in remote areas of Colorado and Wyoming that require extended ground transport. The facility would also support transportation to the El Paso, Texas, Port of Entry for repatriation operations, consistent with ICE ERO's national enforcement and removal mission. In addition, the facility's proximity to Denver International Airport would support ICE Air operations and provide a central staging point for removals conducted by air or ground transportation. The combination of detention capacity, interstate access, and airport proximity would improve operational flexibility, reduce transportation inefficiencies, and support timely movement of detainees for transfers, removals, and other custody-related requirements.

8. Furthermore, lack of access to the Big Horn facility would adversely affect ICE's ability to carry out its law enforcement mission, maintain a safe and orderly detention network, and protect public safety. ICE is managing elevated detention requirements associated with its current enforcement posture and increased interior enforcement activity. These demands have placed sustained pressure on existing detention resources, particularly in the Denver AOR, which includes Colorado and Wyoming, the Saint Paul AOR which includes Nebraska, the Chicago AOR which includes Kansas, and the Salt Lake City AOR which includes Utah. ICE's available detention capacity in Nebraska, Kansas, Utah, Wyoming and Colorado is limited. In Colorado, only one facility is currently available, creating a recurring gap between the demand for detention beds and available local capacity. The lack of bedspace in the state is also due to a

Colorado state law prohibiting ICE from entering into Intergovernmental Service Agreements with state and local entities for detainee housing. During periods of elevated demand, ICE must transfer individuals in custody to facilities located well outside the region. This reliance on out-of-area detention capacity creates operational, fiscal, and staffing burdens that would be reduced by access to an additional local facility. Long-distance transfers require substantial coordination and increase costs for ground and air transportation, security, medical support, scheduling, and receiving-facility coordination. They also require Deportation Officers and support personnel to devote significant time to transport planning and execution rather than arrests, case management, removal operations, and other mission-critical responsibilities. Sustained reliance on transfers therefore reduces operational flexibility and compounds existing fiscal and human-capital constraints. The lack of local detention capacity also complicates the safe, secure, and humane management of individuals in ICE custody consistent with established ICE detention standards. Placement far from an individual's community may limit access to family, legal counsel, and other support services, while creating additional administrative requirements for ICE personnel and detention operators.

9. The Denver Area of Responsibility (AOR) continues to experience a persistent and substantial need for additional detention bed space. The Denver AOR regularly receives bed space requests that cannot be accommodated because existing capacity is insufficient. Access to this facility would provide much needed regional detention capacity, reduce reliance on long-distance transfers, lower recurring transportation and staffing demands, and allow ICE personnel to focus more effectively on core enforcement and custody-management responsibilities.

10. The demand for detention capacity is affected by several factors, including ongoing litigation and a court order affecting operations in Colorado. These legal and operational

constraints limit flexibility in managing available bed space and make it more difficult to meet the detention needs of the Denver AOR and other AORs. The Denver AOR must house adult aliens of all custody classification levels and accommodate both male and female populations. Maintaining this capability locally is important to supporting safe, efficient, and appropriate detention placement decisions.

11. Additional local capacity would also allow the Denver AOR to assist other AORs that may lack the ability to house certain adult populations, custody levels, or both males and females. This would strengthen the broader detention network by providing a regional resource when other locations experience capacity constraints.

12. The need for additional capacity is further demonstrated by the Denver AOR's removal activity. In Fiscal Year (FY) 2025, the Denver AOR completed 7,176 removals. In FY 2026, the Denver AOR completed 5,864 removals.

13. Further, removals using commercial air flights remain an important part of the Denver AOR's operations. The Denver AOR completed 259 such removals in FY 2025 and 315 such removals in FY 2026.

14. The Denver AOR has also placed significant numbers of apprehended aliens in the Denver Contract Detention Facility in Aurora, Colorado. In FY 2025, the Denver AOR made 6,101 detention placements. In FY 2026, the Denver AOR made 8,267 detention placements. This increase in intake volume further demonstrates the continuing need for sufficient local detention capacity to safely and efficiently manage the AOR's detained population. In FY 2026, immigration courts within the Denver AOR issued 8,081 removal orders in non-detained proceedings and 2,902 removal orders in detained proceedings. The volume of removal orders issued demonstrates the continued need for sufficient local detention capacity to

support case processing and removal operations.

15. In FY 2026, ERO Denver conducted 6,764 arrests. Of those arrests, 3,927 involved individuals with a criminal nexus, and 149 involved individuals with a gang affiliation. These figures further demonstrate the operational need for appropriately located detention capacity capable of safely housing individuals across custody classifications and supporting enforcement and removal operations.

16. As of the date of this declaration, the Denver AOR has 1,328 individuals in custody. Of that population, 859 individuals, or approximately 64 percent, have a nexus to criminality, whether based on a criminal conviction or pending criminal charges. This population profile further demonstrates the need for sufficient local detention capacity that can safely house individuals with varying custody classifications and support ongoing enforcement and removal operations.

17. Given the continuing volume of bed space requests, existing capacity limitations, legal and operational constraints, the need to house adults of all custody levels and both sexes, significant intake and arrest activity, the volume of removal orders issued, the criminality profile of the current detained population, and the Denver AOR's sustained removal operations, a new local detention facility is necessary. The facility would enhance the Denver AOR's ability to manage its population, support removals, maintain operational continuity, and assist other AORs when capacity or population-specific needs arise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 16, 2026

MONICA S BURKE Digitally signed by MONICA S BURKE
Date: 2026.10.16 16:29:31 -04'00'

Monica Burke
Assistant Director, Custody Management Division
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security